UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 30, 2013

LETTER TO COUNSEL:

    RE:    *Moraima Ramos-Rodriguez v. Commissioner, Social Security Administration*;
            Civil No. SAG-12-3766

Dear Counsel:

On December 22, 2012, the Plaintiff, Moraima Ramos-Rodriguez, petitioned this Court to review the Social Security Administration's final decision to deny her claims for supplemental security income ("SSI") and disability insurance benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Ms. Ramos-Rodriguez's reply. (ECF Nos. 16, 18, 21). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U. S. C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will deny both motions and remand the case back to the Commissioner. This letter explains my rationale.

Ms. Ramos-Rodriguez filed her claims on January 22, 2009, alleging disability beginning on October 15, 2008. (Tr. 166-69). Her claims were denied initially on March 30, 2009, and on reconsideration on November 19, 2011 (Tr. 89-92, 94-95). A hearing was held on February 22, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 35-86). Following the hearing, the ALJ determined that Ms. Ramos-Rodriguez was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 13-34). The Appeals Council denied Ms. Ramos-Rodriguez's request for review (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Ramos-Rodriguez suffered from the severe impairments of osteoarthritis, degenerative disc disease, and bipolar disorder. (Tr. 18). Despite these impairments, the ALJ determined that Ms. Ramos-Rodriguez retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b) except she is limited to simple routine work; with minimal public contact; a sit/stand option; and should avoid concentrated exposure to pulmonary irritants.

(Tr. 20). The ALJ determined that Ms. Ramos-Rodriguez could not perform her past relevant work as a fast food cashier, hotel housekeeper, and food preparation worker. (Tr. 27). However,

considering Ms. Ramos-Rodriguez's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs existing in significant numbers in the national economy that Ms. Ramos-Rodriguez can perform. (Tr. 28).

Ms. Ramos-Rodriguez presents three arguments on appeal. She first argues that the ALJ made a combination of errors at Step Two of the sequential analysis, including a failure to consider several of her mental and physical conditions, and a failure to designate her asthma and carpal tunnel syndrome as severe. Second, Ms. Ramos-Rodriguez takes issue with the ALJ's analysis of several Listings. She argues that the ALJ erroneously considered Listing 12.02, failed to consider Listing 12.04, and inadequately considered Listings 1.00 and 12.08. Finally, Ms. Ramos-Rodriguez argues that the ALJ incorrectly concluded that she had a high school education and could communicate in English. While I find generally that Ms. Ramos-Rodriguez's arguments are unpersuasive, I further find that the ALJ failed to provide sufficient analysis with respect to her carpal tunnel syndrome and any associated limitations while assessing her RFC. Remand is therefore appropriate. In so holding, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Ramos-Rodriguez is not entitled to benefits is correct or incorrect.

Beginning with the unpersuasive arguments, Ms. Ramos-Rodriguez contends that the ALJ failed to consider her adjustment disorder, intermittent explosive disorder, borderline personality disorders, chondromalacia of the left knee, trochanter bursitis of the left hip, and radiculopathy at Step Two of the sequential evaluation. Pl.'s Mot. 36. At Step Two, the claimant need only make a threshold showing that an "impairment or combination of impairments ... significantly limits [his or her] physical or mental ability to do basic work activities" for the ALJ to move onto the subsequent steps in the five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(c). Despite this relatively low bar, Ms. Ramos-Rodriguez does not cite any functional limitations associated with the cited mental and physical impairments that the ALJ failed to consider in connection with her osteoarthritis, degenerative disc disease, and bipolar disorder. For example, the ALJ expressly acknowledged Ms. Ramos-Rodriquez's anger problems and intermittent explosive disorder in his discussion of her mental impairment of bipolar disorder. *See* (Tr. 22-23). The ALJ also discussed various records showing Ms. Ramos-Rodriguez's back and neck pain in connection with her osteoarthritis and degenerative disc disease. *See* (Tr. 22). He specifically considered a report from Ms. Ramos-Rodriguez's follow-up examination for low back pain. *Id.* Ms. Ramos-Rodriguez relies on this very report as support for her chondromalacia of the left knee and radiculopathy diagnoses. *See* (Tr. 22; 433-35). The ALJ's failure to make a Step Two finding for each specific diagnosis did not result in a lack of consideration of any particular functional limitations.

Ms. Ramos-Rodriguez also contends that the ALJ erred at Step Two by failing to conclude that her asthma was severe. Pl.'s Mot. 38. The evidence of record shows that Ms. Ramos-Rodriguez's asthma was controlled with an Albuterol inhaler. *See* (Tr. 282, 536, 719, 728). The records from an emergency room visit on March 7, 2009 noted "no acute respiratory distress," "normal respiratory effort," and wheezing that was exacerbated after "smoking marijuana." (Tr. 337); *see also* (Tr. 344-47). Ms. Ramos-Rodriguez complained of wheezing

during a September 10, 2010 emergency room visit, however, upon examination, she was in "no acute respiratory distress" and had "normal non labored respiratory rate and volume," and her wheezing was described as "mild." (Tr. 600). An August 17, 2009 medical report listed bronchitis and asthma as diagnoses for a respiratory cough. (Tr. 374). As a result of this evidence, I cannot conclude that the ALJ made an erroneous determination. Moreover, even if I were to agree that the ALJ erred in his evaluation of Ms. Ramos-Rodriguez's asthma at Step Two, such error would be harmless. Ms. Ramos-Rodriguez made the threshold showing of other severe impairments, and the ALJ correctly continued the sequential evaluation and considered the combined impact of her impairments, both severe and non-severe, on her ability to work. *See* 20 C.F.R. § 404.1523. This is evidenced, in part, by the ALJ's inclusion of a pulmonary irritant limitation in the RFC. *See* (Tr. 20). Therefore, remand is not required to address the ALJ's Step Two findings.

Ms. Ramos-Rodriguez next argues that the ALJ erroneously considered Listing 12.02 instead of Listing 12.04, and erroneously analyzed Listing 12.08.[1] Pl. Mot. 42-49. The ALJ found that Ms. Ramos-Rodriguez's mental impairment did not meet or medically equal the criteria of Listings 12.02 or 12.08. Listings 12.02, 12.04, and 12.08 all require the claimant to satisfy the "paragraph B" criteria described in Listing 12.01. Listing 12.04 further allows a claimant to meet "paragraph C" criteria, if the "paragraph B" criteria are not met.

Ms. Ramos-Rodriguez has not met her burden to establish that any Listing has been met or equaled. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). In order to satisfy the "paragraph B" criteria, a claimant's mental impairment must result in a least two of the following: "marked restrictions of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.01. The ALJ found that Ms. Ramos-Rodriguez had only mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation of extended duration. *See* (Tr. 19-20). Substantial evidence supports the ALJ's findings, specifically the mental RFC assessment by Dr. Payne, which found no marked restrictions in any category. (Tr. 24, 354-57). Dr. Payne noted that Ms. Ramos-Rodriguez was "capable of appropriate social interaction," and determined that she was "able to understand and follow instructions and complete tasks." *Id.* at 354-57. The ALJ also cited Ms. Ramos-Rodriguez's activities of daily living and consultative examination reports in support of the findings. (Tr. 19-20). The ALJ reasonably assigned little weight to the contradictory opinions. Specifically, the ALJ assigned little weight to the RFC assessment by Dr. Boschulte, (Tr. 742), because it lacked treatment records to support its conclusion, and was

---

[1] Listing 12.02, which Ms. Ramos-Rodriguez believes should not have been addressed in her case, pertains to "organic mental disorders." Pl.'s Mot. 45-49. Listing 12.08 describes personality disorders, which exist when "personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08. Listing 12.04 describes "[a]ffective [d]isorders: characterized by a disturbance of mood, accompanied by a full or partial maniac or depressive syndrome." *Id.* at § 12.04.

inconsistent with the record as a whole, and to the RFC assessment by Ms. Kane (Tr. 737), who the ALJ determined lacked expertise in psychiatry.[2] *See* (Tr. 24-25).

Ms. Ramos-Rodriguez also fails to fulfill other criteria in the relevant Listings. With respect to episodes of decompensation, Dr. Payne and Dr. Boschulte both found that Ms. Ramos-Rodriguez had one or two episodes of decompensation. (Tr. 368, 742). "Repeated" episodes of decompensation are defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(4). There is no evidence in the record to support a finding that Ms. Ramos-Rodriguez's episodes of decompensation were "repeated," as would be required to support a finding that a Listing was met or equaled. Similarly, Ms. Ramos-Rodriguez fails to cite to any evidence suggesting that her impairments might satisfy the "paragraph C" criteria of Listing 12.04, which requires a showing of a chronic affective disorder, including repeated episodes of decompensation, or a risk of decompensation upon a minimal increase in mental demands, or an inability to function outside a highly supportive living arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Ms. Ramos-Rodriguez lives in a traditional family setting and, as noted above, has not experienced repeated episodes of decompensation. Because an ALJ is required to discuss listed impairments and compare them individually to Listing criteria only where there is "ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments," *Ketcher v. Apfel,* 68 F. Supp. 2d 629, 645 (D. Md. 1999), I find no basis for remand in the failure to assess Listing 12.04.

Ms. Ramos-Rodriguez's argument about Listing 1.00 is similarly flawed. She argues that the ALJ failed to specify which sub-listings were considered, instead stating only that he considered the various musculoskeletal disorders of Listing 1.00, but found that their "precise criteria" had not been met. Pl.'s Mot. 42. (citing Tr. 19). While the ALJ provided no further analysis of any particular 1.00 Listing, as noted above, the ALJ's duty to evaluate a Listing is only triggered where there is ample evidence that the Listing could be met. *Ketcher,* 68 F. Supp. 2d at 645. Ms. Ramos-Rodriguez has cited no medical evidence to suggest that she meets the criteria in Listing 1.04A, particularly "motor loss (atrophy with associated muscle weakness)." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 1.04A. Instead, the medical records show full muscle strength. (Tr. 285, 434, 441, 450, 459, 558, 600, 751, 753, 755, 757). In the absence of ample evidence suggesting that Ms. Ramos-Rodriguez suffered motor loss, the ALJ did not err in failing to identify Listing 1.04A.

In her final unpersuasive argument, Ms. Ramos-Rodriguez contends that the ALJ incorrectly found that she had a high school education and could communicate in English. It is clear from the record that Ms. Ramos-Rodriguez obtained her GED. *See* Pl.'s Mot. 49; (Tr. 45, 290). However, she contends that she "cannot read English and has problems communicating in

---

[2] The forms used by Dr. Boschulte and Ms. Kane rate the patient's difficulties in maintaining concentration, persistence or pace on a scale of "none/seldom/often/frequent/constant" instead of "none/mild/moderate/marked." (Tr. 737, 742). Because the terms used do not correspond to the "marked" findings required by the regulations, the forms cannot directly substantiate a finding.

English" because she received her diploma after attending a school in which only Spanish was spoken. Pl.'s Mot. 49. While some indications in the record suggest that Ms. Ramos-Rodriguez had difficulty with written English (Tr. 230, 265, 356), substantial evidence supports the ALJ's conclusion that she could maintain effective communication in English. Several hospital reports note that Ms. Ramos-Rodriguez had "[n]o language barrier." *See* (Tr. 275, 284, 337, 534, 558, 583, 599). A psychiatric report by Dr. Reeves stated that "Ms. Rodiguez [sic] had some difficulty understanding my questions in that her native tongue is Spanish, but her English, I thought was relatively well." (Tr. 351). Ms. Ramos-Rodriguez also told Dr. Reeves that although she does not read books, she reads the newspaper when she is looking for a job. (Tr. 350). Additionally, Ms. Ramos-Rodriguez had no difficulty communicating with the ALJ, or with her attorney at the hearing. As a result, I find that the record contains substantial evidence to support the ALJ's conclusion.

However, I find that the ALJ provided an inadequate record on which to assess his findings regarding Ms. Ramos-Rodriguez's carpal tunnel syndrome and associated wrist/hand impairments. The ALJ stated that Ms. Ramos-Rodriguez's medical history showed a "history of hand pain relating to a left hand tendon repair…" and "possible bilateral carpal tunnel syndrome." (Tr. 19). The ALJ noted that motor conduction studies revealed that her bilateral carpal tunnel was "mild," and that no surgery had been recommended. *Id.* The ALJ also noted that Ms. Ramos-Rodriguez did not wear splints on a regular basis, as prescribed. *Id.* Finally, the ALJ notes that Dr. Kang found Ms. Ramos-Rodriguez's alleged symptoms "to be out of proportion to her physical examination and findings." (Tr. 446). Despite the evidence cited by the ALJ, the record includes objective findings substantiating a wrist impairment, in addition to physical examinations documenting reduced grip strength. *See, e.g.*, (Tr. 577) (nerve conduction studies "suggestive of sensory neuropathy of bilateral median and right radial nerve"); (Tr. 423) (consultative examination indicating, "There is decreased sensation noted in the mid digits. Grip strength is diminished."). More importantly, medical sources indicated that Ms. Ramos-Rodriguez had functional limitations in grasping, pushing, and manipulation. (Tr. 735-38) (Ms. Kane opinion suggesting no ability to perform manipulatives because "any repetitive motion causes pain and numbness"); (Tr. 421-32) (Dr. Barrish consultative examination suggesting that she could handle, finger, and feel with both hands occasionally). The ALJ declined to credit the opinions of those medical sources as to the manipulative limitations, providing little explanation other than a conclusory assertion of a "lack of objective medical evidence to support the limitations." (Tr. 26). The ALJ's RFC contained no restriction as to manipulation with the hands or fingers, and the VE was not questioned regarding the amount of manipulation any of the identified jobs required. As a result, I cannot find that the lack of analysis was harmless error. In light of the objective findings from the diagnostic testing and physical examination that may, contrary to the ALJ's assertion, support some restrictions as suggested by Ms. Kane or Dr. Barrish, further analysis is required to permit review of the ALJ's decision that no manipulative limitations are required in Ms. Ramos-Rodriguez's RFC.

Thus, for the reasons given, the Commissioner's Motion for Summary Judgment (ECF No. 18) and Ms. Ramos-Rodriguez's Motion for Summary Judgment (ECF No. 16) will be

*Moraima Ramos-Rodriguez v. Commissioner, Social Security Administration*
Civil No. SAG-12-3766
October 30, 2013
Page 6

DENIED. The ALJ's opinion will be VACATED and the case will be REMANDED for further proceedings. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                          Sincerely yours,

                          /s/

                          Stephanie A. Gallagher
                          United States Magistrate Judge